**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ABBVIE INC. and ABBVIE BIOTECHNOLOGY LTD., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:21-cv-2899 |
| v. | ) ) ) | Hon. Judge Franklin U. Valderrama |
| ALVOTECH HF., | ) ) ) | Magistrate Judge M. David Weisman |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALVOTECH HF.'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION,
LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND
FAILURE TO JOIN A NECESSARY PARTY**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ........................................................................................................................4

I.      The BPCIA Does Not Contemplate Any Of The Counts Brought By AbbVie ..........4

     A.     AbbVie's § 271(e)(2)(C) Claims Are Improper in this Second Phase Litigation .....................................................................................................4

     B.     AbbVie's Declaratory Judgment Claims Must Be Brought Against Alvotech USA Under the BPCIA ...................................................................7

II.     AbbVie's Prior Arguments To Exclude Alvotech USA Should Be Rejected ............9

     A.     Alvotech USA Is Not an Agent of Alvotech hf. for the BLA ........................9

     B.     Neither the BPCIA Nor the Hatch Waxman Cases Provide a Precedent for Filing Suit Without the Applicant ...............................................................10

     C.     Without Alvotech USA, AbbVie Fails to State a Claim, the Court Has No Subject Matter Jurisdiction, and the Complaint Fails to Join a Necessary Party .......................................................................................................13

III.    This Court Can, And Should, Exercise Its Discretion and Refuse to Hear AbbVie's Declaratory Judgment Claims....................................................................................14

IV.   AbbVie's Complaint Should Be Dismissed for Lack of Personal Jurisdiction ........15

CONCLUSION...................................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Zenith Labs., Inc.*,
   934 F. Supp. 925 (N.D. Ill. 1995), *dismissed*, 78 F.3d 603 (Fed. Cir. 1996)..........................14

*AbbVie Inc. v. Alvotech hf.*,
   1:21-cv-2258 (N.D. Ill. Apr. 27, 2021)............................................................ *passim*

*AbbVie Inc. v. Amgen Inc.*,
   No. 1:16-cv-666 (D. Del. Aug. 4, 2016) ..............................................................11

*AbbVie Inc. v. Boehringer Ingelheim Int'l GMBH*,
   No. 1:17-cv-1065 (D. Del. Aug. 2, 2017) ..............................................................11

*Acorda Therapeutics Inc. v. Mylan Pharmaceuticals*,
   817 F.3d 755 (Fed. Cir. 2016)..............................................................15

*Additive Controls & Measurement Sys. Inc. v. Flowdata, Inc.*,
   96 F.3d 1390 (Fed. Cir. 1996)..............................................................13

*Adverio Pharma GmbH v. Alembic Pharms. Ltd.*,
   2019 WL 581618 (D. Del. Feb. 13, 2019) ..............................................................10

*Alvotech USA Inc. et al. v. AbbVie Inc. et al.*,
   Case No. 2:21-cv-00265-RAJ-DEM (E.D. Va. May 11, 2021)....................................3

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*,
   480 U.S. 102 (1987)..............................................................15

*Burda v M. Ecker Co.*,
   954 F.2d 434 (7th Cir. 1992) ..............................................................13

*Evers v. Astrue*,
   536 F.3d 651 (7th Cir. 2008) ..............................................................9

*Forde v. Arburg Gmbh*
   *+ Co KG*, 2021 WL 148877 (N.D. Ill. Jan. 15, 2021) ..........................................15

*Hibbs v. Winn*,
   542 U.S. 88 (2004)..............................................................6

*Medimmune, Inc. v. Genentech, Inc.*,
   127 S. Ct. 764 (2007)..............................................................4

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007)....................................................................................................8

*Otsuka Pharmaceutical Co. v. Hetero USA, Inc.*,
    2020 WL 6822971 (D. Del. Nov. 20, 2020) .........................................................11

*In re Rosuvastatin Calcium Patent Litig.*,
    703 F.3d 511 (Fed. Cir. 2012)..............................................................................12

*Sandoz Inc. v. Amgen Inc.*,
    137 S. Ct. 1664 (2017)........................................................................................3, 5

*Semiconductor Energy Lab. Co. v. Nagata*,
    706 F.3d 1365 (Fed. Cir. 2013)............................................................................13

*Smithkline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*,
    2001 WL 184804 (N.D. Ill. Feb. 20, 2001) ........................................................11

*Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*,
    978 F.3d 1374 (Fed. Cir. 2020).............................................................................12

*Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*,
    No. 3:18-cv-14305, Dkt. No. 64 (D.N.J. March 25, 2021)...................................12

*Warner Chilcott Co. v. Mylan Pharmaceuticals, Inc.*,
    2017 WL 603309 (E.D. Tex. Jan. 19, 2017)........................................................12

*Williams v. Planet Fitness, Inc.*,
    2021 WL 1165101 (N.D. Ill. Mar. 26, 2021)........................................................14

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)..............................................................................................14

## Statutes

28 U.S.C. § 2201 ...........................................................................................................4, 5

35 U.S.C. § 271(e) ..................................................................................................*passim*

42 U.S.C. § 262(*l*)...................................................................................................*passim*

## Other Authorities

FED. R. CIV. P. 19..................................................................................................13, 14

## INTRODUCTION

This "second phase" BPCIA case is AbbVie's most recent extra-statutory effort to block non-party Alvotech USA's proposed biosimilar to Humira®, AVT02. Because AbbVie's Complaint ignores the jurisdictional requirements of the BPCIA, it should be dismissed.

The BPCIA simply does not provide for what AbbVie has done here—namely, 1) simultaneously filing claims under both 35 U.S.C. § 271(e)(2) and the Declaratory Judgment Act in a "second phase" case; and 2) asserting "second phase" claims against a party that neither provided a notice of commercial marketing under the BPCIA nor applied for approval for the contested biosimilar drug. As detailed in Alvotech hf.'s pending motion to dismiss AbbVie's "first phase" BPCIA case, the BPCIA outlines two potential phases of litigation between a BLA applicant and the reference product sponsor ("RPS"). In the first phase, the RPS "shall bring an action for patent infringement" against the BLA applicant on a group of patents negotiated by those two parties during the pre-litigation patent dance. *See* 42 U.S.C. § 262(*l*)(6). The act of patent infringement that is the subject of this "action" is the BLA applicant's submission of its BLA application. *See* 35 U.S.C. § 271(e)(2).

The BPCIA's second phase of litigation allows the RPS to seek preliminary injunctive relief against the BLA applicant if and only if the applicant gives the RPS a 180-day notice of commercial marketing. *See* 42 U.S.C. § 262(*l*)(8)-(9). Because such a suit must be filed "before . . .the first commercial marketing" of the BLA product, the BPCIA requires the second phase suit to be one for declaratory judgment to determine potential future infringement. *Id.*

In its Complaint, AbbVie flatly ignores the distinctions between the two phases solely for the purposes of attempting to secure venue in this Court. First, AbbVie brings counts as if this were phase one, based on the artificial act of infringement of filing a BLA application. But the BPCIA only permits such claims in phase one, not in phase two. Compounding this flaw, as it did

in the first phase case, AbbVie did not sue the actual BLA applicant required by the BPCIA, Alvotech USA. AbbVie's counts under 35 U.S.C. § 271(e) should thus be dismissed.

Similarly flawed are AbbVie's declaratory judgment counts, purportedly based on the notice of commercial marketing provided not by defendant Alvotech hf., but by Alvotech USA. Because these counts exclude the BLA applicant Alvotech USA, the BPCIA does not recognize them at all, as the provisions in the BPCIA related to declaratory judgment all expressly require the BLA applicant. Indeed, standing alone, AbbVie's declaratory judgment claims against Alvotech hf., the Icelandic manufacturer of the potential drug, make little, if any, sense. Alvotech hf. will undertake no activity inside the United States, nor does it currently plan to import AVT02 into the United States. This lack of connection to the United States reaffirms that Alvotech USA, the actual BLA applicant and the provider of the notice of commercial marketing, is a required defendant for AbbVie's declaratory judgment action.

Finally, we note that AbbVie's second phase case includes not just a handful of patents on which it intends to seek a preliminary injunction but *fifty-eight* additional patents. This appears to be every patent AbbVie owns that it claims covers the manufacture and use of the 100 mg/ml biosimilar of Humira®. This is inappropriate under any reasonable interpretation of the BPCIA and the Declaratory Judgment Act. Apparently recognizing this, AbbVie has already repeatedly told this Court that it does not intend actually to assert all these patents, as if it is just part of the game to assert 58 patents and then decide later which ones to pursue. Respectfully, this behavior is out of bounds. Until AbbVie identifies the patents it intends to assert in phase two, the Court should decline to hear AbbVie's declaratory judgment claim. Enough is enough. AbbVie's game playing with its "minefield" portfolio on Humira® needs to come to an end.

## BACKGROUND

The BPCIA governs the resolution of patent issues related to biosimilar products, such as

2

AVT02. The BPCIA's patent resolution scheme begins when the "subsection (k) applicant" (also "BLA applicant" herein) files an application for a biosimilar product with FDA. *See* 42 U.S.C. § 262(*l*). After filing the application, the BLA applicant can, and did here, engage in a process provided by 42 U.S.C. § 262(*l*), colloquially known as the "patent dance." *See Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1670–71 (2017); *see also* Exs. A-C[1].

During the patent dance relevant to this case, Alvotech USA and AbbVie exchanged certain patent and product information and identified a list of patents for the parties to litigate in a first phase litigation. *See* 42 U.S.C. § 262(*l*)(2)-(6). AbbVie had every opportunity to add any additional patents to that list, or to disagree with the inclusion of any patents on that list, but did not. Under § 262(*l*)(6)(A), and as allowed by § 271(e)(2)(C), AbbVie then had to sue Alvotech USA within 30 days with respect to those patents in a first phase of litigation.[2] Instead, AbbVie sued Alvotech hf. in this District on April 27, 2021. *See AbbVie Inc. v. Alvotech hf.*, 1:21-cv-2258 (N.D. Ill. Apr. 27, 2021). Alvotech hf. moved to dismiss that case.[3] *Id.* at Dkt. No. 27.

This suit is the second phase of litigation related to AVT02 under the BPCIA, triggered by Alvotech USA's "notice of commercial marketing." Under the BPCIA, Alvotech USA is required to provide such notice not later than 180 days before the first date of commercial marketing of AVT02. *See* 42 U.S.C. § 262(*l*)(8)(A). After the notice, the BPCIA gives AbbVie the option to initiate a second phase of litigation in which it may "seek a preliminary injunction prohibiting **the**

---

[1] All exhibits cited herein are attached to the Declaration of Louis Fogel filed herewith.

[2] Typically, with no actual sale, offer for sale, or other potentially infringing act related to AVT02, AbbVie would not be able to sue for patent infringement. To remove this hurdle and foster speedy resolution of patent disputes relating to biosimilar products, Congress made the submission of an application under subsection (k) "an 'artificial' act of [patent] infringement" of the identified patents under 35 U.S.C. § 271(e)(2)(C). *Sandoz*, 137 S. Ct. at 1666.

[3] Alvotech USA, along with Alvotech hf., also filed a declaratory judgment action against Plaintiffs in the proper forum (the Eastern District of Virginia) with the proper parties. *See Alvotech USA Inc. et al. v. AbbVie Inc. et al.*, Case No. 2:21-cv-00265-RAJ-DEM (E.D. Va. May 11, 2021).

*subsection (k) applicant* from engaging in the commercial manufacture or sale of [AVT02] until the court decides the issue of patent validity, enforcement, and infringement with respect to [the second phase patents]." *See id*. at § 262(*l*)(8)(B)(emphasis added). In contrast to the first phase litigation, the second phase litigation is not based on the artificial act of submitting a BLA application, but instead on the "definite and concrete" dispute resulting from the six-month notice of future actual infringement. *See* 28 U.S.C. § 2201; *see also Medimmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764, 771 (2007). Once again ignoring the BPCIA, AbbVie did not sue Alvotech USA, but instead, filed this case against Alvotech hf. (*See* Compl., ¶ 17.)

AbbVie's Complaint includes 117 counts, asserting a total of 58 patents against Alvotech hf. AbbVie's counts include claims of "patent infringement" purportedly brought pursuant to 35 U.S.C. § 271(e)(2)(C) and claims for declaratory judgement of infringement. (*See* Compl., ¶¶ 182-1814) As explained below, all of AbbVie's claims should be dismissed.

## ARGUMENT

## I. The BPCIA Does Not Contemplate Any Of The Counts Brought By AbbVie

### A. AbbVie's § 271(e)(2)(C) Claims Are Improper in this Second Phase Litigation

AbbVie's Complaint includes a count under § 271(e)(2)(C) for each of the 58 patents AbbVie asserts. But the BPCIA provides no basis for claims under § 271(e)(2)(C) in this second phase. Rather, § 271(e)(2)(C)'s artificial act of infringement is tied to 42 U.S.C. § 262(*l*)(6) of the BPCIA, and thus may be relied upon by an RPS like AbbVie in the first phase litigation only.

The path to the first phase litigation under § 262(*l*)(6) of the BPCIA is set out in detail in the statute. The applicant first provides its BLA to the RPS, which in return provides the applicant with an initial list of patents that it contends cover the biosimilar product. *See* 42 U.S.C. § 262(*l*)(3) ("paragraph 3"). After a series of contention exchanges, the RPS and the applicant then "engage in good faith negotiations to agree on which, if any, patents listed under paragraph (3) . . . shall be

4

the subject of *an action for patent infringement* under paragraph (6)."  42 U.S.C. § 262(*l*)(4).

When agreement is reached on that subset of patents, the RPS has 30 days in which it "shall bring

*an action for patent infringement* with respect to each patent."  42 U.S.C. § 262(*l*)(6).  The "patent

infringement" that is the subject of that lawsuit is that provided for in § 271(e)(2), which makes it

"*an act of infringement* to submit" the BLA application in relation to any patent on the paragraph

3 list.  With that list narrowed (or not, as the case may be) by the parties during the dance, the

lawsuit under 42 U.S.C. § 262(*l*)(6) that results is the "first phase" of BPCIA litigation.  *See*

*Sandoz*, 137 S. Ct. at 1671.

The second phase of litigation under the BPCIA is different.  The second phase is a

declaratory judgment action resulting from possible commercialization of the contested biosimilar,

as opposed to a patent infringement action based on the filing of the BLA application.  *See Sandoz*,

137 S. Ct. at 1672.  The second phase may be initiated by the RPS if—and only if—the applicant

gives "notice to the reference product sponsor not later than 180 days before the date of the first

commercial marketing of the biological product."  42 U.S.C. § 262(*l*)(8)(A).  Until that notice is

given, the BPCIA bars the RPS and the applicant from filing declaratory judgment actions on

patents included on the initial paragraph 3 list.  *See* 42 U.S.C. § 262(*l*)(9)(A).  But after the

applicant gives notice of its intent to commercially market its product, the BPCIA allows either

the RPS or BLA applicant to bring an "action under section 2201 of title 28 for a declaration of

infringement, validity, or enforceability" regarding any of those patents.  *Id*.; *see also Sandoz*, 137

S. Ct. at 1672 ("In this second phase of litigation, either party may sue for declaratory relief.").

The BPCIA *does not* provide, however, for a second "action for patent infringement" in reliance

on either 42 U.S.C. § 262 or 35 U.S.C. § 271(e)(2). Instead, after the notice of commercial

marketing, the RPS must proceed by way of a declaratory judgment action of infringement,

validity, or enforceability, which may include a request for preliminary injunction. *See* 42 U.S.C. § 262(*l*)(8).

AbbVie's complaint dispenses with all of this and asserts causes of action both under the Declaratory Judgment Act and 35 U.S.C. § 271(e)(2) for its second phase case. This, AbbVie may not do. Indeed, allowing AbbVie to proceed in this fashion would render large parts of the statutory scheme nonsensical. For example, as noted, Congress explicitly barred the RPS from filing a declaratory judgment action on the paragraph 3 list patents before a notice of commercial marketing. 35 U.S.C. § 262(*l*)(9)(A). Congress instituted this framework to save the resources of the parties and the courts by allowing the parties to first litigate the (presumably) smaller group of patents resulting from the patent dance. *See* 42 U.S.C. § 262(*l*)(6)(A). If an RPS were able to rely on § 271(e)(2)(C)'s artificial act of infringement for all patents under the BPCIA as an independent basis for jurisdiction, then the bar on declaratory judgment actions in the BPCIA is meaningless. Because the act of infringement under 271(e)(2) occurs at the time of filing, the RPS could immediately sue the BLA applicant on all of the paragraph 3 patents at any time, circumventing the bar on declaratory judgment actions ***before*** the notice of commercial marketing and reading § 262(*l*)(9) out of the statute. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp.181–186 (rev. 6th ed.2000)).

Because § 271(e)(2)(C) does not provide a basis for jurisdiction for second-phase patents under the BPCIA, AbbVie's § 271(e)(2)(C) counts should be dismissed for failure to state a cognizable claim and lack of subject matter jurisdiction.

### B.     AbbVie's Declaratory Judgment Claims Must Be Brought Against Alvotech USA Under the BPCIA

AbbVie's Complaint also includes declaratory judgment counts brought under the BPCIA, but they are brought against the wrong party.  The second phase of BPCIA litigation provides for the possibility of preliminary relief, but ***only*** against "the subjection (k) applicant."  *See* 42 U.S.C. § 262(*l*)(8)-(9).  The BPCIA could not be more clear or explicit.

The second phase of litigation can commence when the ***subsection (k) applicant*** provides notice of commercial marketing to the RPS.  *See id.*  After that notice is given, the RPS may file a declaratory judgment action and "may seek a preliminary injunction prohibiting ***the subsection (k) applicant*** from engaging in the commercial manufacture or sale of such biological product until the court decides the issue of patent validity, enforcement, and infringement" of any patent identified during the patent dance but not litigated in the first phase litigation.  42 U.S.C. § 262(*l*)(8)(B) (emphasis added); *see also* § 262(*l*)(9).  Nothing in the BPCIA suggests that AbbVie can sue (or obtain injunctive relief against) some other entity without suing the applicant.

But of course, Alvotech USA, not Alvotech hf., is the subsection (k) applicant for the AVT02 BLA.  (*See* Exs. A, D at 1; *see also* Compl., ¶¶ 33-35; Dkt. No. 1-2 (Compl., Ex. 5) at 29.)  Indeed, the Court need go no further than the cover page of the AVT02 BLA for that fact.  (Ex. D (identifying the "Name of Applicant" as "Alvotech USA Inc.").  AbbVie did not sue the applicant, Alvotech USA, as required by the BPCIA, so AbbVie's declaratory judgment counts should be dismissed for failure to state a cognizable claim and lack of subject matter jurisdiction.

This is not some technicality or "form over substance," as AbbVie has argued.  Rather, this is a fundamental failing of AbbVie's complaint.  The reason that the BPCIA requires the applicant is that it allows the Court to judge infringement based on the attributes of the product at issue. This is, after all, what the parties pre-suit dance exchanges were about—does the use or

manufacture of AVT02 meet the limitations of the claims of the asserted patents, and, if it does, are those patents valid or enforceable. If the BLA applicant is a party to the case, then this inquiry makes sense—it has applied for approval to market the product in the United States, engaged in the dance and, as has happened here, given notice of commercial marketing for that product.

But if the applicant is not a party, then the infringement inquiry may very well turn on other matters. For example, Alvotech hf. is in Iceland. (*See* Dkt. No. 1-2 (Compl., Ex. 2) at 8.) It will neither make, use nor sell AVT02 in the United States, nor is it currently intending to import AVT02 into the United States. "It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007). AbbVie has not alleged—nor can it—that Alvotech hf. will perform any actions within the United States, now or in the future, that could constitute infringement of a U.S. patent.

AbbVie's infringement case against Alvotech hf. is thus on life support from the outset. Indeed, in its Complaint, AbbVie relies almost exclusively on activities of Alvotech USA to support a claim to alleged future U.S. infringement by Alvotech hf. (*See, e.g.*, Compl., ¶¶ 38, 198–204.) In its Complaint, AbbVie points only to the filing of the BLA, the notice of commercial marketing, and a general press release about Teva[4] as evidence of past or future United States activity by Alvotech hf. (*See, e.g.*, Compl., ¶¶ 38, 198–204.) All rely on non-party Alvotech USA. It was Alvotech USA, not Alvotech hf., that filed the BLA for FDA approval to commercialize AVT02. (*See* Exs. A, D at 1; *see also* Compl., ¶¶ 33-35; Dkt. No. 1-2 (Compl., Ex. 5) at 29.) And it was also Alvotech USA, not Alvotech hf., that served the notice of commercial marketing. (Ex.

---

[4] The press release does not distinguish between Alvotech USA and Alvotech hf. and is not specific to any product.

F.)  After approval of AVT02, Alvotech USA, not Alvotech hf., will hold the BLA and transfer the rights necessary for commercial partners to sell AVT02 in the United States.  (*See* Exs. A, D at 1.)

These are the inconvenient facts of this case that AbbVie asks this Court to run roughshod over by permitting this case to go forward without the BLA applicant.  The statute's language is plain and has good reasons for requiring the BLA applicant.  The Court should dismiss AbbVie's declaratory judgment claims.

## II.    AbbVie's Prior Arguments To Exclude Alvotech USA Should Be Rejected

Alvotech hf. expects based on AbbVie's position in the first phase case that AbbVie will run from the BPCIA's text, taking the position that it need not sue Alvotech USA.  But none of its arguments to date changes the reality that Alvotech USA is the BLA applicant, without which there is no subject matter jurisdiction or cognizable claim, and is the necessary party.

### A.    Alvotech USA Is Not an Agent of Alvotech hf. for the BLA

While AbbVie alleges that Alvotech hf. "directed Alvotech USA to act as its agent between the FDA and Alvotech during the regulatory process" (*see* Compl., ¶ 33), AbbVie offers no support for this allegation, and none exists.  *See Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (in determining whether to dismiss for lack of jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue").  Indeed, after identifying "Alvotech USA Inc." as the applicant, the cover page of Alvotech USA's AVT02 BLA leaves empty the "Authorized U.S. Agent" section.  (Ex. D.)  Alvotech USA is not some "store front" or "small outpost," involved only in "administrative" work or just "licking the stamp," as AbbVie has gratuitously argued.  *See, e.g.*, *AbbVie*, No. 1:21-cv-2258, July 21, 2021 Hearing Tr. at 5:24-6:10, 7:25-8:3. 8:13-16 (N.D. Ill. July 21, 2021).  Instead, Alvotech USA is a fully owned subsidiary, incorporated in Virginia, employing, among

others, the Head of Regulatory Affairs, Chief IP Counsel, and Chief Scientific Officer. (*See* Dkt. No. 1-2 (Compl., Ex. 2) at 8.) Alvotech USA is responsible for the regulatory and intellectual property legal aspects of the Alvotech family of companies. It was the Head of Regulatory Affairs at Alvotech USA in Virginia that signed the BLA and oversaw its preparation. (Ex. D at 3.) Since at least the 2020 filing of the BLA, Alvotech USA has had all of the interactions with FDA related to AVT02. (*Id.* at 1). And, upon approval of AVT02, as the BLA applicant, Alvotech USA will hold the rights necessary to sell AVT02 in the United States and will work with commercial partners to sell AVT02 in the United States. (*See id.*; Ex. E.)

Because Alvotech USA is not an agent, the *Adverio* case previously raised by AbbVie is not on point. *Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, 2019 WL 581618 (D. Del. Feb. 13, 2019). The ANDA applicant in *Adverio*, Alembic, was a named defendant and its status in the litigation was not challenged. *See id.* at *1. Instead, the issue before the court was whether an authorized U.S. agent for Alembic's ANDA (INC Research, LLC, an otherwise unrelated party) was also a proper party in the case. In contrast to the facts in *Adverio*, Alvotech USA is not an authorized agent, but instead is the "subsection (k) applicant" for the AVT02 BLA and will be involved with the BLA product following approval. (Ex. D.)

### B. Neither the BPCIA Nor the Hatch Waxman Cases Provide a Precedent for Filing Suit Without the Applicant

Relying on case law under the Hatch-Waxman Act, AbbVie has also previously argued both that Alvotech USA is not a proper party to this suit, and that regardless of Alvotech USA's role, Alvotech hf. is potentially liable and can be sued on its own. *See AbbVie*, No. 1:21-cv-2258, Dkt. No. 31 (N.D. Ill. June 28, 2021). None of its arguments carry any weight.

As an initial matter, the Hatch-Waxman Act is a separate statue with far less specific pre-litigation processes compared to the BPCIA. The Hatch-Waxman Act, for instance, does not

10

include a detailed pre-suit exchange like that of the BPCIA; does not divide litigation into two separate, distinct phases like the BPCIA; and, does not specifically identify the applicant as the party that must be sued in litigation. At bottom, case law addressing the proper parties to suit under the Hatch-Waxman Act is limited. And in every single BPCIA case filed in its 12 years of existence, the plaintiff has sued the subsection (k) applicant, including cases filed by AbbVie related to biosimilars of Humira®. *See, e.g.*, *AbbVie Inc. v. Boehringer Ingelheim Int'l GMBH*, No. 1:17-cv-1065 (D. Del. Aug. 2, 2017); *AbbVie Inc. v. Amgen Inc.*, No. 1:16-cv-666 (D. Del. Aug. 4, 2016).

As to the specifics of the cases cited by AbbVie, not a single one of them has held that an ANDA applicant under the Hatch-Waxman Act is not a proper party to a suit under that statute. In fact, at times, they have implied the opposite. *See, e.g.*, *Smithkline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 2001 WL 184804, at *3 (N.D. Ill. Feb. 20, 2001) ("Smithkline has not presented, and the Court has been unable to locate, any authority supporting the proposition that a person other than an ANDA filer can be held liable for direct infringement under section 271(e)(2)(A).").[5] To hold that a BLA applicant is not a BLA applicant or a proper party under the statute turns the entire BPCIA on its head.

To date, AbbVie has not identified a single case in Hatch-Waxman's 37-year history that was filed without naming the actual applicant as a defendant in one fashion or another. *See AbbVie*, No. 1:21-cv-2258, Dkt. No. 31 (N.D. Ill. June 28, 2021). AbbVie's cases answer only the question of whether a party *in addition to the applicant* can be sued under the Hatch-Waxman Act. *See, e.g.*, *Otsuka Pharmaceutical Co. v. Hetero USA, Inc.*, 2020 WL 6822971, at *2 (D. Del. Nov. 20,

---

[5] While the case law post-*Smithkline* has seemingly expanded the definition of "submitters" under § 271(e)(2) under the Hatch-Waxman Act, it has never been to the exclusion of ANDA applicants.

2020); *Warner Chilcott Co. v. Mylan Pharmaceuticals, Inc.*, 2017 WL 603309, at *4 (E.D. Tex. Jan. 19, 2017).

At the status hearing on July 21, 2021, AbbVie asserted that *Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*, 978 F.3d 1374 (Fed. Cir. 2020), another Hatch-Waxman case, supported its position.[6] Not so. In *Valeant*, suit was filed against Mylan Pharmaceuticals ("MPI"), the applicant of the ANDA-at-issue, parent company Mylan Inc., and Mylan Laboratories ("MLL"). *Id.* at 1376. Accordingly, as has always been the case, the Hatch-Waxman plaintiff sued the applicant for the ANDA at issue.

What the Federal Circuit's opinion in the case concerns is the interaction of venue laws and the Hatch Waxman Act. Indeed, the Mylan entities moved to dismiss on two bases: (1) that venue was improper as to MPI and Mylan Inc.; but also that (2) Valeant's complaint failed to state a claim against non-applicants Mylan Inc. and MLL. *Id.* at 1377. The district court dismissed the case as to ***all*** of the Mylan entities based on its finding that venue was improper as to MPI and Mylan Inc., and did not reach the 12(b)(6) issue. *Id.* The Federal Circuit affirmed the district court's venue decision as to MPI and Mylan Inc., but found venue proper for MLL, and remanded for the district court to rule on the unaddressed motion to dismiss MLL in the first instance. *Id.* at 1384. Despite AbbVie's contentions to the contrary, the Federal Circuit did not indicate that the case could proceed against non-applicant MLL alone—that question was not before the court— the applicant had been sued. The parties settled shortly after remand with no substantive rulings. *See Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*, No. 3:18-cv-14305, Dkt. No. 64 (D.N.J. March 25, 2021). *Valeant*, thus, provides no support for AbbVie's

---

[6] AbbVie also cites to *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511 (Fed. Cir. 2012), where the applicant was also sued.

approach.

**C.    Without Alvotech USA, AbbVie Fails to State a Claim, the Court Has No Subject Matter Jurisdiction, and the Complaint Fails to Join a Necessary Party**

By not suing Alvotech USA, AbbVie has not pled a cognizable patent claim, under § 271(e)(2)(C) or the Declaratory Judgment Act, and this Court does not have subject matter jurisdiction. *See Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1369 (Fed. Cir. 2013); *see also Burda v M. Ecker Co.*, 954 F.2d 434, 439 (7th Cir. 1992).

AbbVie's Complaint also fails under Rule 19 because Alvotech USA is an absent, yet necessary and indispensable party.  As the subsection (k) applicant, Alvotech USA is a necessary party to BPCIA litigation because it is required by statute.  According to its Complaint (Compl., ¶ 43, Prayer for Relief.), as explained above, AbbVie seeks relief only available against Alvotech USA, namely a preliminary injunction under the BPCIA. *See* 42 U.S.C. § 262(*l*)(8)(B) (emphasis added).   AbbVie cannot bypass the BPCIA's command to sue Alvotech USA and get its contemplated injunctive relief through Alvotech hf. Courts "have long observed the general rule that a court may not enter an injunction against a person who has not been made a party in the case before it." *Additive Controls & Measurement Sys. Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996).  And while traditional notions of joint and several liability typically apply in patent cases, in this case, the BPCIA does not allow AbbVie a choice of which party to sue.

Nor is joinder feasible.  Alvotech USA is incorporated in Virginia, "resides" only in Virginia, and only has a regular and established place of business" in Virginia.  *See TC Heartland*, 137 S. Ct. at 1520.  Venue is thus not proper and joinder not feasible.  Nor is there anything this Court could do to "lessen[] or avoid[]" prejudice to Alvotech USA, because Alvotech USA's participation is required by statute.  FED. R. CIV. P. 19(B).  And any judgment without Alvotech USA would be inadequate because this Court cannot grant the relief under the BPCIA.  AbbVie's

Complaint should thus also be dismissed under Rule 19 for failure to join Alvotech USA. *See Williams v. Planet Fitness, Inc.*, 2021 WL 1165101, *6 (N.D. Ill. Mar. 26, 2021).

### III. This Court Can, And Should, Exercise Its Discretion and Refuse to Hear AbbVie's Declaratory Judgment Claims

Even if AbbVie's declaratory judgment claims were sufficient under Rule 12(b)(6), the Court should exercise its discretion and decline to hear them. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (explaining "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act"). AbbVie had a proper avenue for its claims: AbbVie could have sued Alvotech USA, the statutorily correct entity, in the Eastern District of Virginia, the statutorily correct venue. Allowing AbbVie to circumvent the BPCIA by excluding the actual BLA applicant would undermine Congress' policy in enacting the BPCIA. *Cf. Abbott Labs. v. Zenith Labs., Inc.*, 934 F. Supp. 925, 939 (N.D. Ill. 1995), *dismissed*, 78 F.3d 603 (Fed. Cir. 1996) ("[R]efus[ing] to exercise jurisdiction over Plaintiff's declaratory judgment claim because it would undermine Congress' policy in enacting the [Hatch-Waxman] Act.").

AbbVie's gamesmanship also makes it appropriate for the Court to decline jurisdiction. During the patent dance, Alvotech USA engaged in good faith negotiations with AbbVie to develop the list of four patents in the first phase. AbbVie chose not to narrow its list and instead acquiesced to the four patents identified by Alvotech USA. Now, when Alvotech seeks speedy resolution of those four patents, AbbVie brings up the additional 58 patents and essentially seeks to combine both lists in an effort to bog down the process. As AbbVie well knows, no case can proceed with 58 patents, and AbbVie even acknowledges that it will not pursue all 58 patents, but refuses to tell Alvotech hf. (or this Court) which patents are really at issue. *See AbbVie*, No. 1:21-cv-2258, Dkt. No. 35 (N.D. Ill. July 9, 2021). At least until AbbVie identifies the patents it will actually litigate, the Court should decline jurisdiction over this bloated declaratory judgment case.

14

**IV.    AbbVie's Complaint Should Be Dismissed for Lack of Personal Jurisdiction**

AbbVie also cannot establish this Court's specific personal jurisdiction over Alvotech hf. because Alvotech hf. has not directed any activities to Illinois.  Alvotech hf. has not marketed or sold its AVT02 product (or any product for that matter) anywhere, let alone in Illinois. Alvotech USA, not Alvotech hf., has taken all relevant acts in the United States related to AVT02, including preparing and filing the AVT02 BLA and sending the BLA and its notice of commercial marketing to AbbVie.  (*See* Ex. A; Compl. ¶¶ 31-40.)  This Court cannot exercise personal jurisdiction over Alvotech hf. based on the acts of Alvotech USA absent a showing that Alvotech USA is Alvotech hf.'s "alter ego," a theory AbbVie has not and cannot advance.  *See Forde v. Arburg Gmbh + Co KG*, 2021 WL 148877, at \*5 (N.D. Ill. Jan. 15, 2021).

AbbVie also cannot establish personal jurisdiction over Alvotech hf. based on the *Acorda* decision.  *See Acorda Therapeutics Inc. v. Mylan Pharmaceuticals*, 817 F.3d 755 (Fed. Cir. 2016). Unlike Mylan in *Acorda*, Alvotech hf. is not the applicant.  Alvotech USA, not Alvotech hf., will hold the relevant rights to sell the AVT02 product if and when approved by FDA.  Thus, Alvotech hf. has not "sought approval to sell" the AVT02 product in the jurisdiction, unlike Mylan in *Acorda*.  An extension of *Acorda* to this case is thus unwarranted.

Finally, the exercise of personal jurisdiction is inconsistent with "fair play and substantial justice."  *See Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 113–14 (1987).  The burden on Alvotech hf., as an Icelandic manufacturer, is "undoubtedly high," considering Alvotech hf. could not have anticipated being sued here.  Considerations of unfairness override any minimum-contacts basis for specific personal jurisdiction over Alvotech hf.

## CONCLUSION

For the foregoing reasons, the Court should grant Alvotech hf.'s motion.

Date: July 29, 2021                    Respectfully submitted,

                                       ALVOTECH HF.

                                       By: */s/ Louis E. Fogel*
                                             Louis E. Fogel (# 6281404)
                                             **JENNER & BLOCK LLP**
                                             353 N. Clark St.
                                             Chicago, IL 60654
                                             Tel: 312-222-9350 / Fax: 312-527-7764
                                             Email: lfogel@jenner.com

                                             Jonathan E. Singer (# 6211867)
                                             **FISH & RICHARDSON P.C.**
                                             12860 El Camino Real, Ste. 400
                                             San Diego, CA 92130
                                             Tel: 858-678-5070 / Fax: 858-678-5099
                                             Email: singer@fr.com

                                             Martina Tyreus Hufnal (*pro hac vice*
                                             pending)
                                             Douglas McCann (*pro hac vice* pending)
                                             **FISH & RICHARDSON P.C.**
                                             222 Delaware Ave, 17th Fl.
                                             Wilmington, DE 19801
                                             Tel: 302-652-5070 / Fax: 302-652-0607
                                             Email: tyreushufnal@fr.com;
                                             dmccann@fr.com

                                             *Attorneys for ALVOTECH HF.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 29, 2021 I caused a true and correct copy of the foregoing to be electronically served on counsel of record via the Court's CM/ECF system.


<u>/s/ *Louis E. Fogel*    </u>
Louis E. Fogel