**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ABBVIE INC. and ABBVIE BIOTECHNOLOGY LTD., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:21-cv-2899 |
| v. | ) ) | Hon. Judge John Z. Lee |
| ALVOTECH HF., | ) ) | Magistrate Judge M. David Weisman |
| Defendant. | ) ) ) | |

**REPLY IN SUPPORT OF DEFENDANT ALVOTECH HF.'S MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, LACK OF
PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND FAILURE
TO JOIN A NECESSARY PARTY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    The BPCIA Does Not Authorize a Second Phase Suit Under
      35 U.S.C. § 271(e)(2)(C) ................................................................................ 2

II.   Declaratory Judgment Claims Must Be Brought Against
      the Subsection (k) Applicant, Here Alvotech USA ...................................... 4

      A.    AbbVie Had to Sue the Applicant .................................................... 4

      B.    Alvotech USA, Not Alvotech hf., is the Applicant ........................... 8

      C.    Alvotech USA is Not an Authorized U.S. Agent For Alvotech hf. ................ 11

III.  The Court Should Decline Declaratory Judgment Jurisdiction .................................... 12

IV.   Personal Jurisdiction ................................................................................ 13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Zenith Labs., Inc.*,
   934 F. Supp. 925 (N.D. Ill. 1995), *dismissed*, 78 F.3d 603 (Fed. Cir. 1996)..........................12

*AbbVie Inc. v. Amgen Inc.*,
   No. 1:16-cv-00666, Dkt. No. 1 (D. Del. Aug. 4, 2016) ...............................................................6

*AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*,
   No. 1:17-cv-01065, Dkt. No. 1 (D. Del. Aug. 2, 2017) ...............................................................6

*AbbVie Inc. v. Sandoz Inc.*,
   No. 3:18-cv-12668, Dkt. No. 1 (D.N.J. Aug. 10, 2018) ..............................................................6

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*,
   817 F.3d 755 (Fed. Cir. 2016).....................................................................................................13

*Adverio Pharma GmbH v. Alembic Pharms. Ltd.*,
   No. 18-cv-73-LPS, 2019 WL 581618 (D. Del. Feb. 13, 2019) ..................................................10

*Allergan, Inc. v. Teva Pharms. USA, Inc.*,
   No. 2:15-CV-1455-WCB, 2016 WL 1572193 (E.D. Tex. Apr. 19, 2016) ..............................14

*Boggs v. West*,
   188 F.3d 1335 (Fed. Cir. 1999).....................................................................................................6

*Burda v M. Ecker Co.*,
   954 F.2d 434 (7th Cir. 1992) .......................................................................................................11

*Cephalon, Inc. v. Watson Pharms., Inc.*,
   629 F. Supp. 2d 338 (D. Del. 2009)...............................................................................................8

*Evers v. Astrue*,
   536 F.3d 651 (7th Cir. 2008) .......................................................................................................10

*Forde v. Arburg GmbH + Co KG*,
   No. 20-CV-02904, 2021 WL 148877, *6 (N.D. Ill. Jan. 15, 2021)........................................12

*Genentech, Inc. v. Amgen Inc.*,
   No. CV 17-1407, 2020 WL 636439 (D. Del. Feb. 11, 2020) ...................................................9

*Hanson v. Denckla*,
   357 U.S. 235 (1958)......................................................................................................................13

*Helsinn Healthcare S.A. v. Hospira, Inc.*,
   No. CV 15-2077 (MLC), 2016 WL 1338601 (D.N.J. Apr. 5, 2016) ......................................14

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ...................................................................................................................3

*Otsuka Pharm. Co. v. Hetero USA, Inc.*,
   1:19-cv-1954-LPS, 2020 WL 6822971 (D. Del. Nov. 20, 2020) ...........................................10

*In re Rosuvastatin Calcium Pat. Litig.*,
   703 F.3d 511 (Fed. Cir. 2012)..................................................................................................7

*Sandoz Inc. v. Amgen Inc.*,
   137 S. Ct. 1664 (2017) ..................................................................................................... *passim*

*Semiconductor Energy Lab. Co. v. Nagata*,
   706 F.3d 1365 (Fed. Cir. 2013)..............................................................................................11

*Trimble Inc. v. PerDiemCo LLC*,
   997 F.3d 1147 (Fed. Cir. 2021)..............................................................................................11

*Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*,
   978 F.3d 1374 (Fed. Cir. 2020)................................................................................................6

*Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*,
   No. 3:18-cv-14305, Dkt. No. 64 (D.N.J. March 25, 2021).......................................................7

*Walden v. Fiore*,
   571 U.S. 277 (2014).................................................................................................................13

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980).................................................................................................................11

**Statutes**

35 U.S.C. § 271(e)(2)....................................................................................................... *passim*

42 U.S.C.§ 262(*l*) ........................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 65(d)(2)(C) ............................................................................................................9

AbbVie's opposition twists the BPCIA beyond recognition. Congress created subsection (*l*) of the BPCIA to allow the RPS and the biosimilar applicant to resolve any patent disputes prior to the biosimilar applicant bringing a product to market. The BPCIA effectuates this purpose through a complex series of exchanges and negotiations between the RPS and the biosimilar applicant, followed by a first phase of litigation on the patents that result from those negotiations, and then a second phase of litigation during which the RPS "may seek a preliminary injunction prohibiting the subsection (k) applicant from engaging in the commercial manufacture or sale of such biological product." 42 U.S.C. § 262(*l*)(8). As the Supreme Court explained, "[t]he BPCIA sets forth a carefully calibrated scheme for preparing to adjudicate, and then adjudicating, claims of infringement." *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1670 (2017).

AbbVie ignores this carefully calibrated scheme and asks this Court to sanction a new scheme under which the RPS has carte blanche to sue whomever it wants, whenever it wants, wherever it wants. First, AbbVie reads 35 U.S.C. § 271(e)(2)(C)—divorced from the rest of the BPCIA—to create a separate cause of action for every patent identified during the patent dance, effectively allowing the RPS to sue on any of those patents at any time. Second, AbbVie asks this Court to decide that the RPS can skip right over the actual applicant and sue any party that will "financially benefit, in a significant manner from the FDA's approval of the application." (Dkt. No. 39, at 6.) Third, AbbVie attempts to create a BPCIA-specific test for personal jurisdiction that would subject any entity associated in any way with a biosimilar application to personal jurisdiction in all 50 states, no matter their actual or likely future contacts with the forum.

AbbVie's approach, in sum, renders large portions of the BPCIA meaningless and any limits on personal jurisdiction in BPCIA cases a dead letter. The RPS can sue a party that had no involvement in the patent dance, in any jurisdiction, and can use § 271(e)(2)(C) to destroy the

1

distinction between the first and second phases of litigation provided for by Congress. Practically, AbbVie's approach would complicate the resolution of the actual dispute, changing the focus of a BPCIA suit from whether or not the product described in the BLA infringes any valid and enforceable patent of the RPS to an examination of the relationship between the defendant and the actual applicant and other parties that will potentially "financially benefit" from the application.

All of this begs the question, why does AbbVie not just sue the entity that the BLA itself identifies as the applicant, Alvotech USA? The answer is clear: to slow down the resolution of the dispute. And while AbbVie accuses Alvotech hf. of forum shopping, Alvotech USA simply set up its business operations in a way that (should) make it predictable where it would be subject to suit. AbbVie, on the other hand, has resorted to the highly unusual step of refusing to sue the statutorily required party, Alvotech USA, because it knows it cannot establish venue over Alvotech USA in this Court—something AbbVie has never contested. The Court should reject AbbVie's machinations and dismiss its Complaint.

**I.     The BPCIA Does Not Authorize a Second Phase Suit Under 35 U.S.C. § 271(e)(2)(C)**

AbbVie's Complaint first purports to state claims pursuant to 35 U.S.C. § 271(e)(2)(C). (*See, e.g.*, Compl., ¶¶ 15, 188.) But AbbVie cannot state a claim or establish subject matter jurisdiction for those claims because § 271(e)(2)(C) only applies to patents identified for the first phase of litigation, not this second phase suit.

As explained in Alvotech hf.'s opening brief, AbbVie's read of § 271(e)(2)(C) cannot be correct at least in part because it would vitiate the clear two-phase structure that Congress created in the BPCIA. (*See* Dkt. No. 29 at 6.) Contrary to that Congressional intent, if § 271(e)(2)(C) were interpreted to create a cause of action for all patents identified during the dance, as AbbVie contends, an RPS could sue on any patent identified during the patent dance immediately upon

BLA filing, without waiting for the second phase. Section 271(e)(2)(C) does not include any temporal limitation, but instead makes it "an act of infringement to submit . . . with respect to a patent that is identified in the list of patents described in [§ 262(*l*)(3)], an application seeking approval of a biological product."

Contrary to AbbVie's response, there is also nothing in the literal language of § 262(*l*) that would prohibit a premature "second phase" suit under AbbVie's interpretation of § 271(e)(2)(C). Section 262(*l*)(9) prohibits only declaratory judgment actions (not § 271(e)(2)(C) claims) on second phase patents at least until the applicant provides notice of commercial marketing or if the applicant fails to comply with the patent dance provisions. *See* 42 U.S.C. § 262(*l*)(9). And § 262(*l*)(6) only provides in pertinent part that "[i]f the subsection (k) applicant and the reference product sponsor agree on patents as described in paragraph (4), not later than 30 days after such agreement, the reference product sponsor shall bring an action for patent infringement with respect to each such patent." 42 U.S.C. § 262(*l*)(6)(A).

The reason that an RPS cannot sue on any patent it wants during the first phase is clear from the rest of the BPCIA: the second phase is not a suit based on § 271(e)(2)'s artificial act of infringement, but a declaratory judgment action resulting from potential commercialization of the contested biosimilar. *See Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1672 (2017). Indeed, Congress recognized that § 271(e)(2)(C) only applies to first phase patents by drafting § 262(*l*)(9), which prohibits ***declaratory judgment*** actions on all second phase patents until the BLA applicant provides its notice of commercial marketing. Had Congress intended otherwise, it easily could have drafted § 262(*l*)(9) to prohibit both declaratory judgment actions ***and § 271(e)(2)(C) claims*** prior to the BLA applicant's notice of commercial marketing. But it did not because once the

3

parties have danced, § 271(e)(2)(C)(i) only applies to the patents negotiated for first phase litigation.

Alvotech's interpretation of § 271(e)(2)(C) also does not conflict with the statute's reference to "the list of patents described in [§ 262(*l*)(3)]." As discussed above, when read in light of the two-phased framework of § 262(*l*), an approach AbbVie recommends (*see* Dkt. 39. at 4-5), § 271(e)(2)(C) can only apply to first phase patents. In some scenarios, such as here, the first phase patents will comprise only a subset of the (*l*)(3) patents identified in the patent dance. But in others, the first phase patents could include all of the identified (*l*)(3) patents. Section 271(e)(2)(C)'s identification of patents "described in section 351(*l*)(3) of the Public Health Service Act (including as provided under section 351(*l*)(7) of such Act)," accounts for both of these scenarios.

In sum, interpreting § 271(e)(2)(C) as only creating an independent cause of action for the first phase patents is the only interpretation that gives effect to all provisions of both the BPCIA and the Patent Act. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004). Accordingly, AbbVie has failed to state a claim and cannot establish subject matter jurisdiction for its claims purportedly brought pursuant to that subsection.

## II. Declaratory Judgment Claims Must Be Brought Against the Subsection (k) Applicant, Here Alvotech USA

### A. AbbVie Had to Sue the Applicant

Under the BPCIA, declaratory judgment claims in the second phase must be brought against the subsection (k) applicant.[1] Without the applicant, AbbVie cannot state a claim or establish subject matter jurisdiction for its declaratory judgment claims.

---

[1] Because Alvotech USA is the BLA applicant, it is statutorily necessary, as argued during the August 12, 2021 hearing. (*See* Case No. 1:21-cv-02258, Dkt. No. 49 at 36:24-13.)

The language of the BPCIA could not be more clear:  after notice of commercial marketing is given, the RPS may "seek a preliminary injunction prohibiting ***the subsection (k) applicant*** from engaging in the commercial manufacture or sale of such biological product until the court decides the issue of patent validity, enforcement, and infringement" of any patent identified during the patent dance but not litigated in the first phase litigation. 42 U.S.C. § 262(*l*)(8)(B) (emphasis added); *see also* 42 U.S.C. § 262(*l*)(9).  Nothing in the BPCIA suggests that AbbVie can sue (or obtain injunctive relief against) some other entity without suing the applicant.  Indeed, "[t]he BPCIA's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Sandoz*, 137 S. Ct. at 1675 (quoting *Great-West Life Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002)) (emphasis in original).

Despite the clear language of the statute, AbbVie incorrectly argues it did not have to sue the applicant because § 262(*l*)(8)(B) is "permissive and does not preclude action against other putative infringers."  (Dkt. No. 39 at 11.)  The § 262(*l*)(8)(B) language does indeed give the RPS the choice to seek, or not to seek, a preliminary injunction on the second phase patents.  *See* 42 U.S.C. § 262(*l*)(8)(B).  But if an RPS seeks a preliminary injunction, the BPCIA provides that it is the ***subsection (k) applicant*** that is the subject of any injunctive relief. 42 U.S.C. § 262(*l*)(8)(B). And there is no question that AbbVie's complaint arises under the BPCIA.  (*See, e.g.*, Compl., ¶¶ 19, 43, 53, Prayer for Relief.)  As AbbVie explained in its Complaint, "[t]he BPCIA . . . specifically contemplates injunctive relief, including preliminary injunctive relief, to prevent unlawful infringement."  (*Id.* at ¶ 43.)  AbbVie also explains in its Complaint that because Alvotech USA provided its notice of commercial marketing under the BPCIA, AbbVie "is bringing this suit and may also seek a preliminary injunction to preserve the *status quo* while the Court adjudicates

the parties' rights under the patents." (*Id.* at ¶ 53.) AbbVie's Complaint confirms there is no other basis apart from the BPCIA under which it is bringing its declaratory judgment claims and seeking a preliminary injunction.

The BPCIA's mandate that the RPS sue the applicant makes practical sense too. The purpose of BPCIA litigation is to decide if the product, manufacture of the product, or intended use(s) of the product described in the BLA would infringe any patent identified in the patent dance. *See* 42 U.S.C. § 262(*l*)(3)(A)(i). The BPCIA's "carefully crafted and detailed enforcement scheme" to achieve this goal only makes sense when the applicant is a defendant and liability attaches to the applicant and those working in concert with the applicant. Indeed, the applicant has applied for approval to market the product in the United States, engaged in the dance and, as has happened here, given notice of commercial marketing for that product. (*See, e.g.*, Compl., ¶¶ 42–53.) But without the applicant, the infringement inquiry may very well turn on matters far afield from the BLA application itself—such as the circumstances surrounding the non-applicant defendants' exact conduct to determine if they will actually infringe.

This case presents a good example. Here, with a foreign company like Alvotech hf., who is not the BLA applicant, the infringement determination would turn on many other facts, such as the contractual relationships with Alvotech USA and Teva. (*See* Dkt. No. 1-2 (Compl., Ex. 7) at 43–46.) Even more, these types of facts are transitory because the relationship between those parties could change at any time before the BLA product is licensed and sold in the United States. What is not transitory is the entity that actually identifies itself as the ***applicant*** (not the U.S. agent) in the BLA, here Alvotech USA. (*See* Dkt. No. 30-4.) Unlike non-applicant entities, such as Alvotech hf. or Teva, Alvotech USA will hold the commercial rights upon approval of the BLA.

AbbVie's actions in previous cases indicate that it too understood the BPCIA to require suit against the applicant. Indeed, in every previous Humira®-related BPCIA case, AbbVie has sued the applicant, even when there was an arrangement similar to here, involving a US applicant that was a subsidiary of a foreign manufacturer.[2] AbbVie's previous suits belie its current assertions regarding who the proper parties are in a BPCIA suit.

AbbVie is wrong that *Valeant* authorizes BPCIA suits excluding the applicant. *See Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*, 978 F.3d 1374 (Fed. Cir. 2020). In *Valeant*, a Hatch-Waxman case, the district court dismissed a case against three parties – the ANDA applicant and two other related entities – for lack of venue. *Id.* at 1377. On appeal, the Federal Circuit affirmed the dismissal of the ANDA applicant and one of the related entities, but found venue proper against the other related entity, and remanded to the district court the issue of whether the complaint failed to state a claim as to the other related entity. *Id.* at 1384–85. The court did not address or decide the issue that AbbVie suggests that it did—whether a Hatch-Waxman case can proceed without the applicant. Nor would it have. "As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below." *Boggs v. West*, 188 F.3d 1335, 1337–38 (Fed. Cir. 1999). Accordingly, the court took that approach, remanding to the district court to determine the propriety of suit against the non-applicant defendant, Mylan Laboratories. *Valeant*, 978 F.3d at 1384–85. But the district court did

---

[2] For example, in AbbVie's BPCIA litigation against Sandoz, AbbVie sued the BLA applicant, Sandoz, Inc., which has a principal place of business in New Jersey, along with its foreign parent, Sandoz International GmbH. *See AbbVie Inc. v. Sandoz Inc.*, No. 3:18-cv-12668, Dkt. No. 1 (D.N.J. Aug. 10, 2018). Likewise, in AbbVie's BPCIA litigation against Boehringer Ingelheim, AbbVie sued the BLA applicant, Boehringer Ingelheim Pharmaceuticals, Inc., an entity incorporated in Delaware, along with its foreign parent, Boehringer Ingelheim International GmbH. *See AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. 1:17-cv-01065, Dkt. No. 1 (D. Del. Aug. 2, 2017). And in AbbVie's BPCIA litigation against Amgen, AbbVie sued the BLA applicant, Amgen Inc., an entity incorporated in Delaware, along with its foreign subsidiary, Amgen Manufacturing, Limited. *See AbbVie Inc. v. Amgen Inc.*, No. 1:16-cv-00666, Dkt. No. 1 (D. Del. Aug. 4, 2016).

not address this issue because the parties settled shortly after remand. *See Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*, No. 3:18-cv-14305, Dkt. No. 64 (D.N.J. March 25, 2021).

AbbVie's reliance on *In re Rosuvastatin* is also unhelpful. *See In re Rosuvastatin Calcium Pat. Litig.*, 703 F.3d 511 (Fed. Cir. 2012). While AbbVie characterizes Apotex U.S. as "the subsidiary that signed the application," AbbVie leaves out an important detail. Apotex U.S. signed the ANDA as Apotex Canada's "authorized U.S. agent" and Apotex Canada was still the ANDA applicant. *Id.* at 528. Unlike Apotex U.S., Alvotech USA is not an authorized U.S. agent; Alvotech USA is the BLA applicant. (*See, e.g.*, Dkt. No. 30-4.)

In sum, AbbVie cannot state a claim for declaratory judgment under the BPCIA without suing the applicant. As detailed below, AbbVie failed to sue the applicant here, Alvotech USA.

## B. Alvotech USA, Not Alvotech hf., is the Applicant

AbbVie does not contest that the AVT02 BLA identifies Alvotech USA as the BLA applicant. (*See, e.g.*, Dkt. No. 30-4.) Instead, AbbVie argues that, notwithstanding the facts, Alvotech hf. is really the "applicant." To do so, AbbVie creates a whole new statutory scheme where anyone who is a "submitter" under 35 U.S.C. § 271(e)(2)(C) is also "the applicant" under the BPCIA. (*See* Dkt. No. 39 at 9–11.) Taking it a step further, AbbVie further argues that the manufacturer of the biosimilar product is always the "applicant." (*Id.*) AbbVie's arguments cannot be squared with the language of the BPCIA.

First, AbbVie is wrong that Alvotech hf. must be the "subsection (k) applicant" if it is considered a "submitter" under § 271(e)(2)(C). AbbVie bases this argument on § 262(*l*)(1), which provides that the "subsection (k) applicant" is "a person that submits an application under subsection (k)." This language confirms the unremarkable proposition that the applicant is also a "submitter," but not the inverse that anyone who may also be liable as a "submitter" under

§ 271(e)(2)(C) is thereby considered the BLA applicant.  This understanding is consistent with AbbVie's cited Hatch-Waxman cases, which differentiate the "applicant" from those who may additionally be liable as "submitters."  *See, e.g.*, *Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 349 (D. Del. 2009) ("Parties 'actively involved' in preparing the ANDA are deemed to have '***submit[ted]***' the ANDA, regardless of whether they are the named ***applicant*** . . . ." (emphasis added) (quoting *Wyeth v. Lupin Ltd.*, 505 F. Supp. 2d 303, 306–07 (D. Md. 2007)).

Interpreting the BPCIA to make every "submitter" a subsection (k) applicant, as AbbVie proposes, would lead to absurd results.  Unlike the Patent Act, the BPCIA places certain responsibilities on the "subsection (k) applicant" related to the BLA that only the BLA applicant could perform.  For example, § 262(*l*)(2) requires that the subsection (k) applicant provide to the RPS "a copy of the application submitted to the Secretary under subsection (k), and such other information that describes the process or processes used to manufacture the biological product that is the subject of such application."  It is also the applicant that is required to engage in the patent dance under §§ 262(*l*)(3)–(5).  As the holder of the application, the ***BLA applicant*** is the only entity that can satisfy these statutory requirements.

AbbVie's interpretation also leads to the possibility of multiple subsection (k) applicants existing for one BLA.  Under this scenario, which "applicant" would be required to satisfy the requirements of the BPCIA?  Would the RPS have multiple patent dances with multiple actors for the same BLA?  The BPCIA does not address these questions because there is only one subsection (k) applicant:  the one listed on the face of the BLA itself.  *See Sandoz*, 137 S. Ct. at 1671–72 (identifying only two different parties to BPCIA patent dance).  And an interpretation to the contrary would allow the RPS to game the system and forum shop in any BPCIA case with

multiple companies involved in the BLA in some way, particularly where foreign companies are involved.

Second, AbbVie is also incorrect that the manufacturer of the biosimilar must also be the "subsection (k) applicant." (Dkt. No. 39 at 10.) AbbVie does not point to any language in the BPCIA to support that view. Nor do *Sandoz* and *Genentech* support AbbVie's argument. *See Sandoz*, 137 S. Ct. at 1670; *Genentech, Inc. v. Amgen Inc.*, No. CV 17-1407, 2020 WL 636439, at *1 (D. Del. Feb. 11, 2020). While both cases refer to the BLA applicant as "the manufacturer of the biosimilar," these statements are dicta and made in passing, as acknowledged by AbbVie's counsel during the hearing on the motion to dismiss in the companion patent suit. (*See* No. 1:21-cv-02258, Dkt. No. 49 at 24:9-15.) While in some situations, the biosimilar manufacturer might also be the applicant, there is no support for finding that the manufacturer is always the applicant, regardless of its involvement (or lack thereof) in the FDA process.

AbbVie is also wrong that the applicant must be the party making the product because an injunction would otherwise be illusory. Indeed, it is the applicant that holds the rights to manufacture and sell a product in the United States upon approval. While the applicant can certainly license those rights, it nevertheless is the ultimate holder of those rights, and an injunction can reach beyond the applicant to "other persons who are in active concert or participation with" the applicant. *See* FED. R. CIV. P. 65(d)(2)(C).

In sum, under AbbVie's incorrect view of the world, the Court should ignore the entity listed as the actual applicant on a BLA, and instead try to determine what parties are "submitters" and who will manufacture the product to identify the applicant. Nothing in the BPCIA or case law suggests such a convoluted approach.

10

### C. Alvotech USA is Not an Authorized U.S. Agent For Alvotech hf.

AbbVie alternatively makes the argument that Alvotech USA is merely an agent for Alvotech hf. This is belied by the record. *See Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (in determining whether to dismiss for lack of jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue"). The BLA application itself identifies "Alvotech USA Inc." as the applicant on the cover page of Alvotech USA's AVT02 BLA and leaves empty the "Authorized U.S. Agent" section. (Dkt. No. 30-4.)

AbbVie's reliance on *Otsuka* and *Adverio* to suggest Alvotech USA is a mere agent is misplaced. *See Otsuka Pharm. Co. v. Hetero USA, Inc.*, 1:19-cv-1954-LPS, 2020 WL 6822971 (D. Del. Nov. 20, 2020); *see also Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, No. 18-cv-73-LPS, 2019 WL 581618 (D. Del. Feb. 13, 2019). Both cases arose in the Hatch-Waxman context and are non-precedential, but more importantly, ***the plaintiff sued the ANDA applicant***. These cases address a separate question not at issue here: whether a party ***in addition to the applicant*** can be sued under the Hatch-Waxman Act. *See, e.g.*, *Otsuka*, 2020 WL 6822971 at *2. And among all the Hatch Waxman cases relied on by AbbVie, *Adverio* is the only case to find that a defendant was not a "submitter" because it was an "agent." *See* 2019 WL 581618 at * 5. In contrast to the facts in *Adverio*, Alvotech USA is the BLA applicant, not an authorized U.S. agent. (*See, e.g.*, Dkt. Nos. 30-4, 30-5.) And Alvotech USA will ultimately hold the rights necessary for Alvotech hf. to manufacture AVT02 and for commercial partners to sell AVT02 in the United States upon its approval.

Accordingly, AbbVie has not shown Alvotech USA is an agent for Alvotech hf., and AbbVie's failure to name Alvotech USA in this suit is fatal to its case. Because Alvotech USA is the applicant, and AbbVie failed to sue Alvotech USA, AbbVie's claims should be dismissed for

failure to state a claim and lack of subject matter jurisdiction. *See Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1369 (Fed. Cir. 2013); *see also Burda v M. Ecker Co.*, 954 F.2d 434, 439 (7th Cir. 1992).

### III.    The Court Should Decline Declaratory Judgment Jurisdiction

Even if declaratory judgment jurisdiction existed, the Court should exercise its discretion to decline it here. As explained in Alvotech hf.'s opening brief, allowing AbbVie to circumvent the BPCIA by ignoring the BLA applicant would undermine Congress' purpose for enacting the BPCIA and reward AbbVie's blatant forum shopping. (*See* Dkt. No. 29 at 14.)

AbbVie's attempt to shift blame and accuse Alvotech of forum shopping rings hollow. Choosing a place of incorporation is not the "forum shopping" frowned upon by the courts. *See Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1158 (Fed. Cir. 2021) ("Because it is headquartered there, this is not a case in which Trimble is a plaintiff that is engaged in forum shopping."). Companies are well within their rights to structure their business operations and conduct to predict where they may, and may not, be haled into court, as has Alvotech USA. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (explaining Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit").

The Court should also consider AbbVie's blatant attempt to slow down this case in assessing discretion. After the hearing on the motion to dismiss in the companion patent suit (*see* Case No. 21-cv-2258, Dkt. No. 49), it is even more clear that AbbVie is trying to drag out this suit indefinitely. Despite receiving Alvotech USA's notice of commercial marketing in May 2021, AbbVie's counsel suggested a preliminary injunction hearing "next year" or "the year after" (*id.* at 40:25). And if the Court ordered a trial, AbbVie would need to try its 4 (or 10) patents "in the

ordinary course," needing "a lot longer to get a full trial on the merits" (*id*. at 49:11-14), and suggesting it might need a three year case schedule despite already litigating the same patents in two separate suits and the parties having already exchanged extensive contentions during the patent dance (*id*. at 41:13-16, 52:9-13).

The scales of equity do not tip in AbbVie's favor here, and the Court should decline jurisdiction over AbbVie's declaratory judgment claims. *Cf. Abbott Labs. v. Zenith Labs., Inc.*, 934 F. Supp. 925, 939 (N.D. Ill. 1995), *dismissed*, 78 F.3d 603 (Fed. Cir. 1996).

## IV.     Personal Jurisdiction

The Court need not even reach the parties' dispute about the proper application of the BPCIA because there is no personal jurisdiction over Alvotech hf. in Illinois.

As an initial matter, Alvotech hf. has no presence in Illinois.  Alvotech hf. is an Icelandic corporation with its headquarters and facilities in Reykjavik, Iceland.  (*See* Dkt. No. 1-2 (Compl., Ex. 4) at 8.)  AbbVie does not allege that Alvotech hf. has offices in Illinois, owns property in Illinois, has assets in Illinois, does business in Illinois, or employs Illinois residents.  (*See* Compl., ¶¶ 30-40.)  And Alvotech hf. has never sold—indeed, has no plans to sell—a product anywhere in the United States, much less in Illinois.   (*See* Compl., ¶ 38 ("Teva will be exclusively commercializing [AVT02] in the U.S." (alteration in original)).)

AbbVie incorrectly alleges that Alvotech hf. is subject to jurisdiction based on a "deliberate and years-long effort to develop AVT02 for sale in the United States."  (Dkt. No. 39 at 15.)  But this is not enough—none of Alvotech hf.'s alleged suit-related activities were purposefully directed to Illinois.  *See Forde v. Arburg GmbH + Co KG*, No. 20-CV-02904, 2021 WL 148877, *6 (N.D. Ill. Jan. 15, 2021). And AbbVie's only suggestion otherwise is that Alvotech hf. "has taken dead aim at AbbVie" through Alvotech's development of AVT02, a Humira® biosimilar. (Dkt. No. 39 at 1.)  But the law is clear that Alvotech hf. is not subject to personal jurisdiction in

Illinois simply because AbbVie alleges harm and one AbbVie entity happens to reside in Illinois. *See Walden v. Fiore*, 571 U.S. 277, 289 (2014) (holding "simply because [defendant] allegedly directed [defendant's] conduct at plaintiffs whom he knew had [forum] connections" did not establish personal jurisdiction).

With no traditional route to establish personal jurisdiction, AbbVie relies almost exclusively on the Federal Circuit's decision in *Acorda*. *See Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755 (Fed. Cir. 2016). In *Acorda*, the Federal Circuit held that a generic drug manufacturer, Mylan, was subject to personal jurisdiction in Delaware because Mylan had filed an ANDA and planned to engage in marketing of the proposed generic drug in the state. *Id.* at 762–63. But *Acorda* cannot be extended to the facts here, where the applicant is not part of the suit. The Federal Circuit in *Acorda* found personal jurisdiction over the entity that actually filed the ANDA with the FDA. *See Acorda*, 817 F.3d at 757. Here, Alvotech USA filed the AVT02 BLA, not Alvotech hf. And the party in *Acorda* most comparable to Alvotech hf., the foreign parent, was originally part of the suit but dismissed by the parties. *Id.* at 757 n.1.

AbbVie's attempt to extend *Acorda* to the facts here would establish a BPCIA-specific test for personal jurisdiction under which ***any*** entity involved with a BLA would be subject to jurisdiction in any of the 50 states, regardless of its actual contacts with the forum state, current or planned. Such a result cannot be correct under Supreme Court precedent. *See Walden*, 571 U.S. at 291 ("The proper focus of the "minimum contacts" inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation." (internal quotations omitted)); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

14

The district court cases AbbVie cites do not change that result. In *Allergan*, a Texas court found personal jurisdiction over two Mylan entities where, in addition to contributing to the ANDA filing, one entity was actively registered to do business and licensed to distribute drugs in the state of Texas, and the other entity had sold more than $1.3 billion of products in Texas, including $460 million in the Eastern District. *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-CV-1455-WCB, 2016 WL 1572193, at \*3 (E.D. Tex. Apr. 19, 2016). And in *Helsinn*, a New Jersey court found personal jurisdiction over a non-signatory entity because it would "become the generic product's sole marketer, seller, and distributor in the United States." *Helsinn Healthcare S.A. v. Hospira, Inc.*, No. CV 15-2077 (MLC), 2016 WL 1338601, at \*8 (D.N.J. Apr. 5, 2016). None of these forum-targeted facts are alleged here.

Date: August 18, 2021          Respectfully submitted,

ALVOTECH HF.

By: */s/ Louis E. Fogel*
       Louis E. Fogel (# 6281404)
       **JENNER & BLOCK LLP**
       353 N. Clark St.
       Chicago, IL 60654
       Tel: 312-222-9350 / Fax: 312-527-7764
       Email: lfogel@jenner.com

       Jonathan E. Singer (# 6211867)
       **FISH & RICHARDSON P.C.**
       12860 El Camino Real, Ste. 400
       San Diego, CA 92130
       Tel: 858-678-5070 / Fax: 858-678-5099
       Email: singer@fr.com

       Martina Tyreus Hufnal (*pro hac vice*)
       Douglas McCann (*pro hac vice*)
       **FISH & RICHARDSON P.C.**
       222 Delaware Ave, 17th Fl.
       Wilmington, DE 19801
       Tel: 302-652-5070 / Fax: 302-652-0607
       Email: tyreushufnal@fr.com;
       dmccann@fr.com

       *Attorneys for ALVOTECH HF.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2021, I caused a true and correct copy of the foregoing to be electronically served on counsel of record via the Court's CM/ECF system.


*/s/ Louis E. Fogel*
Louis E. Fogel